IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

LINDA MORITZ,

                        Plaintiff,                    OPINION AND ORDER

    v.

                                                14-cv-380-wmc

NANCY BERRYHILL, Acting Commissioner
of Social Security,

                        Defendant.

---

Plaintiff Linda Moritz seeks judicial review of an adverse decision of the Commissioner of Social Security, pursuant to 42 U.S.C. § 405(g), which denied her eligibility for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") under Title II and Title XVI of the Social Security Act, codified at 42 U.S.C. §§ 416(i), 423(d) and 1614(a)(3)(A). Specifically, Moritz contends that the Administrative Law Judge ("ALJ"): (1) failed to evaluate her obesity consistent with Social Security Ruling ("SSR") 02-1p; and (2) erroneously found her testimony not credible. While the ALJ did not specifically mention SSR 02-1p, the court finds that he met its requirements. In addition, the court finds that the ALJ made a proper credibility finding. Accordingly, the court will affirm the final decision of the Commissioner, adopting the ALJ's finding that Moritz was not entitled to DIB and SSI.

1

# FACTS[1]

## A. Social Security Application

On September 1, 2010, Moritz filed a Title II application for a period of DIB and a Title XVI application for SSI, alleging disability beginning August 28, 2010. Both applications were denied initially on December 27, 2010, and again upon reconsideration on May 23, 2011. (AR 84-92, 94-102.) A hearing to reconsider the denial of DIB and SSI was held on October 30, 2012, before ALJ Arthur J. Schneider, at which Moritz was both represented by counsel and also testified. (AR 117-122, 51-77.) The ALJ also heard and considered the testimony of Allen R. Searles, a neutral vocational expert.

On December 18, 2012, the ALJ issued a written decision denying Moritz's application for DIB and SSI. (AR 19-32.) The ALJ found that although Moritz has severe impairments, including morbid obesity, she was not disabled within the meaning of the Social Security Act from August 28, 2010, through the date of the opinion. This decision became the final decision of the Commissioner of Social Security on April 5, 2014, when the Appeals Council declined Moritz's request for review of the ALJ's decision. (AR 1-3.)

## B. Overview of Medical Issues

Generally, Moritz's medical record contains treatment notes for diabetes, muscle spasms and cramping, low back pain radiating down her left leg, and foot pain (possibly neuropathy from her diabetes). With that overview, the court provides the following

---

[1] The following facts are drawn from the administrative record ("AR"). (Dkt. #8.)

summary of Moritz's medical record from 2009 until the date of the hearing in October 2012.

The records reflect ongoing treatment for diabetes management and some blood pressure management from August 2009 to October 2012 at the Marshfield Clinic, with Dr. Sheehan providing direct care or at least oversight of nurse visits. During this time, Dr. Sheehan also performed periodic (at least once per year) diabetic foot exams, all of which were normal.

In December 2009, Moritz was seen by Drs. Katherine Patterson, Verica Neskovic, and Swati S. Biswas for muscle cramping and back pain. All three physicians are with the Marshfield Clinic. At a December 2, 2009, appointment, Dr. Patterson noted that Moritz "does not appear to feel comfortable" due to low back pain, and she also mentioned that Moritz was considering applying for bankruptcy. Similarly, in a December 15, 2009, treatment note, Dr. Biswas found Moritz's back was tender to touch and her range of motion was restricted in certain respects, but had no significant abnormalities. Dr. Biswas further noted Moritz's interest in obtaining disability. Dr. Neskovic again saw Moritz on December 17, and after reviewing her history of muscle spasms, noted that her physical exam was normal, changed her medications to deal with the muscle cramps, and suggested therapy.

In January 2009 and again in April of 2010, Moritz underwent nerve conduction studies, both of which showed normal results. She also again saw Dr. Neskovic in April 2010, again complaining of low back pain, this time with radiating pain down her left leg, muscle spasms and some tingling in her feet. Still, Dr. Neskovic noted a "normal

physical exam" except for pain in her low back during straight leg raises. In response, Dr. Neskovic increased Moritz's pain medication. In April, Moritz also had an MRI of her spine. Another doctor, Gregory Peterman, reviewed the results of that MRI and, after comparing them to an earlier June 2007 MRI, noted "no significant interval change in the spondylosis at the lower thoracic spine with small disc protrusions and the degenerative fact hypertrophy in the lower lumbar spine." (AR 707.) In May 2010, Moritz again saw Dr. Biswas as well. At that time, Moritz repeated her complaint of low back pain, radiating down her left leg. The notes from that appointment reflect yet another normal physical exam. Still, Moritz discussed her continuing interest in pursuing a disability claim, although Dr. Biswas noted that he didn't think she would qualify.

Also beginning in May 2010, Moritz began seeing Dr. Poole, a podiatrist, to address her foot pain. At a May 17 appointment, Poole discussed the possibility of plantar fasciitis surgery. Moritz had that surgery in June 2010, after which Dr. Poole noted that she was healing well at two post-operation appointments, the latter occurring approximately three weeks after surgery. Moritz denied having any pain. On August 4, 2010, she requested a note from Dr. Poole stating she could wear tennis shoes to work as she was starting a new job on August 23, 2010.

Despite the seemingly positive results of the foot surgery, Moritz presented at the Aspirus Wausau Hospital Emergency Room complaining of foot pain on August 30, 2010. In early September 2010, Moritz also called Dr. Poole and the offices of Dr. Marie A. Tomasi, also with the Marshfield Clinic, now complaining of *severe* foot pain, and specifically noting a burning feeling. On September 13, 2010, Moritz saw Dr.

Neskovic. The notes reveal that Moritz complained of burning foot pain at that appointment as well, though she noted that her muscle cramping was fairly well controlled with medication and "denie[d] having significant low back pain at present." (AR 404.)

In October and November 2010, Moritz returned to Dr. Poole regarding her foot pain. Poole's treatment plan included new orthotics, for which Moritz was subsequently fitted in December. Despite those orthotics, Moritz complained in a January 2011 phone message to her doctor's office that it felt like she was "walking on hot coals." (AR 535.) The burning foot pain, however, appears to have subsided by March 28, 2011, because in an appointment with Dr. Neskovic on that date, Moritz reported that the "burning sensation in her feet is tolerable." (AR 544-46.) Moritz also told Dr. Neskovic that her muscle spasms were better with medication.

At some point in early 2011, however, Moritz's back pain worsened. From January 2011 through August 2011, Moritz saw doctors at the Aspirus Wausau Hospital pain clinic, where she complained of progressively worse chronic back pain. In February and March 2011, Moritz participated in physical therapy to deal with low back pain caused by a T12-L1 disc extrusion. She also received epidural steroid injections to treat symptomatic T12-L1 disc disease with radiculopathy into the lumbar area bilaterally.

Except for these pain clinic records, Moritz appears not to have seen a treating physician again until October 2011, at which point she complained of an ankle injury. Later, Moritz reported improvement, despite a set back when she "tried to run after her dog." (AR 668.) The medical records also reveal that Moritz attended appointments at

Allied Health Chiropractic Centers from August 2009 through April 2012, but these records describe neither her medical condition nor the nature of the treatments.

During the summer of 2011, Moritz also began exploring possible bariatric surgery for weight loss, but opted not to have the surgery given her lack of insurance coverage. Nevertheless, records suggest that Moritz was successful in losing weight without the surgery, losing approximately 30 pounds by June 2012.

### C. State Agency Doctor's Opinions

After reviewing her medical record, state agency physicians limited her to sedentary work. A Physical Residual Functional Capacity Assessment completed by Pat Chan, M.D., dated 12/23/2010, found that Moritz was "capable of sitting 6 hours in an 8 hour work day with routine position changes. RFC is sedentary." (AR 475.) Another RFC assessment completed by Dr. Chan in May 2011, similarly concluded that "[g]iven the combination of her multiple impairments, she would have difficulty standing/ walking 6/8 hours per day, and is limited to RFC as established." In so finding, Chan also called into question Moritz's credibility, specifically citing: (1) her reports of increased burning pain in her feet, which is arguably inconsistent with her own reported improvement to her neurologist; and (2) her self-reported limits on her ability to only sit for one to two hours per day and walk / stand 20 minutes per day is not consistent with her other reports of functioning. (AR 590) Eventually, Chan limited her to 2 hours of standing or walking in an 8-hour workday and to roughly 6 hours of sitting in an 8-hour workday.

6

**D. Administrative Law Judge Hearing**

At the hearing conducted via videoconference, Moritz testified that she recently began a job as a photographer at J.C. Penney Portrait Studio, where she was scheduled to work approximately 10-12 hours per week. In August 2010, right before she applied for SSI, Moritz had worked at a collections agency for approximately one month, but she had to quit because she "got really sick and sore. I couldn't do the stairs. I had problems with my legs and back." (AR 60.) Between August 2010 and the hearing in October 2012, Moritz attended school and had a "work study position," where she worked in the computer lab at the school she attended for about 12 hours per week. Still, Moritz reported that she missed school and some work study hours due to being in a lot of pain.

When asked where she experienced pain, Moritz answered, "[i]n my back and my legs, and my feet; and I do get muscle spasms throughout my body everywhere but my face." (AR 63.) Moritz also reported that she continues to have burning pain in her feet every day, and at times, she has trouble walking. Contrary to her medical records, Moritz also testified that the planta fasciitis surgery did not help. In addition to pain in her back, legs and feet, Moritz also reported that she was now experiencing migraine headaches "at least every other day, if not every day." (AR 65.) Although, as far as this court can tell, there is *nothing* in her medical record about chronic headaches. At this time, Moritz also began to complain of arthritis in her hands, but again, there does not appear to be any mention in her medical records.

As for her physical limitations, Moritz testified that her job at J.C. Penney was not going well because it requires standing and kneeling, and she was having a lot of

7

discomfort while working. Moritz also testified that she could walk for approximately 30-40 minutes, can stand in one spot for 30 minutes and has to take breaks from sitting about every 20 minutes.

In addition to Moritz, a vocational expert Searles also testified, responding to three hypotheticals from the ALJ. In the first hypothetical, Searles was asked to "assume an[] individual who can lift . . . 10 pounds occasionally, 10 pounds frequently; can stand for two out of eight hours and sit for six out of eight hours. They would have no limit on fine finger manipulation and gross handling." Searles testified that with those limitations, an individual would be able to perform Moritz's past relevant work as a collections agent. Under the second hypothetical, the ALJ added limitations for fine finger manipulation and gross handling, and Searles testified that the individual would not be able to perform Moritz's past relevant work, but that there were still jobs in the national economy the person could perform. Finally, under the third hypothetical, the ALJ added that the individual would be absent from work two or more random days each month, and in response, Searles testified that no jobs existed in the national economy with that limitation included.

### E. Administrative Law Judge's Decision

The ALJ found Moritz suffered from the following severe impairments: "degenerative disc disease, diabetes, mellitus, obesity, plantar fasciitis, and degenerative changes of the bilateral ankles and left knee." The ALJ did not include diabetic neuropathy on his list because: (1) this diagnosis was not substantiated by objective medical findings, such as conduction and sweat tests; (2) a treating neurologist opined

that Moritz did *not* have diabetic neuropathy based on the lack of objective evidence; and (3) Moritz stated in March 2011 that the pain in her feet was tolerable. Nonetheless, the ALJ considered subjective complaints of foot pain in limiting her to sedentary work.

As for Moritz's obesity, the ALJ found "when considering its impact on the relevant body systems individually or in combination," "the evidence does not reflect that the obesity" results in a listing being met or medical equaled. In addition, the claimant does not allege specific work-related limitations secondary to obesity." (AR 26; *see also* AR 30 (stating that obesity considered in crafting RFC, in particular limiting her to sedentary work).) Similarly, the ALJ did not find back pain to be sufficiently severe to meet a listing and qualify as a severe impairment.

In crafting an RFC, the ALJ limited Moritz to sedentary work, and limited her to frequent fine manipulation and frequent gross manipulation. Using now familiar, formulaic (if not hackneyed) language, the ALJ also determined that "the claimant's medical determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (AR 27.)

In fairness, the ALJ supported this finding by describing various reasons for discounting Moritz's credibility or otherwise cabining the limitations normally associated with her severe impairments, including that: (1) the June 2007 and April 2010 MRIs were "about the same" and yet Moritz was able to maintain employment for a significant period of the time between those two dates; (2) Moritz has had relatively normal physical

9

exams in terms of range of motion, gait, no neurologic deficits, etc.; (3) after receipt of physical therapy and epidural steroid injections, treatment notes stated that Moritz's pain was significantly improved; (4) after August 2011, there is no record of regular care for back pain beyond chiropractic care; (5) the medical records revealed Moritz's plantar fasciitis was treated successfully with surgery and she was healing normally; (6) while x-rays revealed degenerative changes in Moritz's ankles and left knee, there were either no specific limitations/symptoms, *or* any limitation would be addressed through a sedentary work RFC; and (7) while her diabetes is not well controlled, there is no evidence of complications or exacerbated symptoms, like retinopathy, nephropathy or neuropathy.

In addition to discussing the limitations of Moritz's impairments, the ALJ discounted her account of work limitations because they are "largely inconsistent with her ability to perform daily activities, including full time schooling, working two part time jobs, working out at the gym three times per week, and maintaining her household. (AR 29.)

OPINION

The standard by which a federal court reviews a final decision by the Commissioner of Social Security is well settled. Findings of fact are "conclusive," so long as they are supported by "substantial evidence." 42 U.S.C. § 405(g). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). When reviewing the Commissioner's findings under § 405(g), the court cannot reconsider facts, re-weigh

the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the ALJ. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). At the same time, the court must conduct a "critical review of the evidence" before affirming the Commissioner's decision, *Edwards*, 985 F.2d at 336. Here, Moritz raises two, principal challenges to the ALJ's decision: (1) he failed to consider her obesity consistent with SSR 02-1p; and (2) he failed to credit Moritz's statements concerning the intensity, persistence and limiting effects of her symptoms. The court will address each challenge in turn.

I. **ALJ's Consideration of Moritz's Obesity**

In determining whether a claimant is under a disability as defined in Social Security Act, the ALJ must conduct a five-step inquiry. *See* 20 C.F.R. § 404.1520; *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995). In the event the claimant suffers from obesity, SSR 02-1p requires the ALJ to incorporate the effects of obesity in the five-step sequential evaluation process. *See* SSR 02-1p at 3; *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004). Still, a failure to consider the effects of obesity explicitly may be a harmless error, so long as the ALJ demonstrated that he reviewed the medical reports of the doctors familiar with the claimant's obesity. *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006); *Skarbek*, 390 F.3d at 504; *Hernandez v. Astrue*, 277 Fed. Appx. 617, 624 (7th Cir. 2008) (unpublished).

As reflected in his opinion, the ALJ considered Moritz's history of obesity in conjunction with her other impairments and crafted an RFC in response. At step 2 of the evaluation, the ALJ explicitly found morbid obesity to be one of Moritz's severe impairments. (AR 25.) In determining whether her residual functional capacity is consistent with medical records, the ALJ again considered Moritz's history of obesity, finding that it was a "contributing factor to the pain and limitations associated with her other impairments," and that an RFC limiting her to sedentary work would address this impairment, both alone and in conjunction with her other impairments. (AR 30.)

In her reply brief, Moritz argues more specifically that the ALJ failed to consider her obesity in conjunction with her diabetic neuropathy. That argument, however, lacks traction because the ALJ determined that Moritz's complaints of foot pain were not a medically determinable impairment, depending in large part on her neurologist's finding that she "did not have diabetic neuropathy based on the lack of objective findings or deficits in strength or sensation on physical exam." (AR 25, *see also* AR 577.) Other than challenging the ALJ's overall credibility determination, Moritz does *not* argue that the ALJ failed to find either diabetic neuropathy as a severe impairment, nor could she credibly on this record.

Similarly, Moritz also contends that the ALJ failed to consider the impact of obesity on her back pain, but here, too, the ALJ discounted the limitations associated with her degenerative disc disease, finding that "nerve conduction studies and EMG testing was normal and an MRI revealed no changes in her degenerative disc disease when compared to images from 2007," reasonably inferring that she should be able to conduct the same activities during the disability period as she did in 2007. (AR 29.)

Here, too, plaintiff does not challenge this specific finding. As such, there is no merit to any claimed error based on the ALJ's failure to consider her obesity in conjunction with an impairment for which the ALJ found narrowed limitations.

Even if the ALJ had erred, it would be harmless given Moritz's failure to explain how the ALJ's claimed failure to address her obesity adequately would have changed the RFC. In particular, other than take issue with the ALJ's rejection of her testimony that she would have to miss two or more days per month because of pain -- an argument addressed below -- Moritz does not explain why a sedentary RFC would not sufficiently address her own obesity, as well as its impact on her other limitations. Accordingly, the court rejects this challenge.

## II. ALJ's Credibility Determination

Moritz also contends that the ALJ's adverse credibility finding is not supported by substantial evidence. The Seventh Circuit instructs, however, credibility determinations are entitled to special deference because the ALJ has the opportunity to observe the claimant testifying, while a reviewing court obviously does not. *Jones v. Astrue*, 623 F.3d 1155, 1160 (7th Cir. 2010). Therefore, courts give an ALJ's credibility determinations a "commonsensical reading," rather than "nitpick the ALJ's opinion for inconsistencies and contradictions," *id.,* and will overturn an ALJ's credibility finding only if "patently wrong." *Carradine v. Barnhart*, 360 F.3d 751, 753 (7th Cir. 2004).

In this case, the ALJ summarized and discussed the various factors supporting his credibility findings, all of which were supported by the evidence on record. As detailed above, the ALJ reviewed each of Moritz's impairments and described why the limitations

associated with the impairments were not as severe as Moritz claimed. (AR 27-30; *see also supra* pp.9-10.) In addition, the ALJ discredited Moritz's credibility because: (1) her claimed work limitations were not consistent with her reported daily activities; and (2) the lack of any treating or examining physician limiting her ability to work.[2]

Moreover, the court's own review of the testimony Moritz provided at the hearing -- in particular, her complaints of headaches and muscle cramping in her hands -- lacks any foundation in the medical record. Accordingly, the court finds no error in the ALJ's credibility assessment, including his rejection of Moritz's testimony that her pain is so severe as to cause her to either miss two or more days per month or have to take multiple breaks per hour.

---

[2] In response to the Commissioner pointing out the absence of a medical opinion, plaintiff argues "given the frequency that ALJ's reject favorable treating source statements, such rationale is more than a bit disingenuous." (Pl.'s Reply (dkt. #19) 5.) Even if plaintiff's criticism were well-founded, plaintiff's counsel, of course, knows that the federal courts frequently review ALJ's treatment of treating physician opinions and remand on that basis, if warranted.

ORDER

IT IS ORDERED that the decision of defendant Carolyn W. Colvin, Acting Commissioner of Social Security, is AFFIRMED and plaintiff Linda Moritz's appeal is DISMISSED. The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 31st day of May, 2017.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge